UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENDON RHINEHART,

    Plaintiff,

v.                           CASE NO.: 8:26-cv-01131

THE KEARNEY COMPANIES, LLC

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, BRENDON RHINEHART, (hereinafter "Plaintiff" or "Rhinehart"), by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against Defendant, THE KEARNEY COMPANIES, LLC (hereinafter "Defendant" or "Kearney"), and states the following:

## NATURE OF ACTION

1. Rhinehart brings this action against the Defendant, his former employer, for failure to pay Plaintiff's wages and retaliation in violation of the Fair Labor Standards Act of 1938 and 29 U.S.C. §§201 – 219 ("FLSA").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, and 28 U.S.C. §1343, and 29 U.S.C. § 216(b).

1

3. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(2) because all events giving rise to these claims occurred within this judicial district and Defendant employed Plaintiff at a location within this judicial district.

## PARTIES

4. At all times material, Defendant, THE KEARNEY COMPANIES, LLC, is a Florida Limited Liability Company principally located at 9625 Wes Kearney Way, Riverview, Florida 33578.

5. At all times material, Defendant was an "employer" subject to the requirement of the FLSA and other applicable law.

6. At all times material hereto, Rhinehart was an "employee" of the Defendant.

7. At all times relevant to this action, the annual gross sales volume of THE KEARNEY COMPANIES, LLC exceeded $500,000 in the year preceding nonpayment.

8. Defendant operates a business that provides excavation, land clearing, underground utility installation, and project management served for residential and commercial developments.

## ALLEGATIONS OF FACT

9. On October 27, 2025, Brendon Rhinehart started working as an Asphalt Foreman for Kearney.

10. As an Asphalt Foreman for Defendant, Rhinehart was primarily tasked with the duties of a physical laborer—operating the asphalt paver, riding on the back of the paver to keep the screed level, physically assisting workers with shoveling and raking asphalt into low spots, and operating the asphalt roller and other heavy equipment.

11. Kearney required Rhinehart to start each day at headquarters to fuel the work truck and grab water for the other workers before he went to the job site.

12. At the job site Rhinehart worked under the direction of the Superintendent and supervised a small crew. However, he was required to work alongside them every step of the way. While supervising the crew, he primarily operated the paver, but he also worked with shovels and rakes and performed other physical tasks.

13. After leaving the job site, Kearney required Rhinehart to drop off paperwork at headquarters, return equipment to headquarters for servicing purposes, and load equipment for the following day of work.

14. Kearney paid Rhinehart an annual base salary of $120,000.00 based on a 40-hour workweek.

15. Kearney incorrectly classified Rhinehart as an exempt salaried employee even though he did not meet the criteria for an exempt salaried employee.

16.    Though Rhinehart supervised a small crew in its work paving asphalt, Kearney should have treated him as non-exempt because he spent at least 90% of his job performing physical labor, he did not have the power to hire or fire crew members, and management did not seek his suggestions or recommendations in making hiring decisions for his crew.

17.    As a foreman, Rhinehart was not required to exercise independent judgment or discretion because he was regularly supervised by Superintendent Brad Knight.

18.    Additionally, Rhinehart was a "blue-collar" worker who worked to pave asphalt and his work regularly involved repetitive operations with his hands, physical skill, and the exertion of energy through manual labor.

19.    Around November 2025, Rhinehart and Melinda Rhinehart (Rhinehart's wife) complained to AnnMarie Scott (HR Director) about Rhinehart not being paid for overtime hours. They pointed out that he should not be exempt from earning overtime pay because he performed primarily non-exempt duties. In response, Ms. Scott told Mr. and Mrs. Rhinehart that Rhinehart's tasks were "temporary," when they were not.

20.    On December 1, 2025, shortly after Mr. and Mrs. Rhinehart complained about his lack of overtime pay, Kearney posted Rhinehart's position on Zip Recruiter in an attempt to find his replacement.

21.  On December 17, 2025, Rhinehart discovered that Kearney had posted his position on the Kearney website.

22.  Rhinehart asked Mr. Knight (Superintendent) about why his position had been posted on Zip Recruiter and the Kearney Website. In response, Mr. Knight stated that Kearney was "looking for a second crew to speed up paving." However, it was clear that there was no need for a second crew because the company only had enough work for one asphalt paving crew.

23.  On December 21, 2025, Rhinehart requested a meeting with a senior member of management to get further clarification and assurances regarding his position being posted on Zip Recruiter and the Kearney website.

24.  On December 29, 2025, Rhinehart attended a meeting with Mr. Knight, Kenneth Montague (Head of Operations), and HR. During this meeting, Mr. Montague reassured Rhinehart that Kearney was not hiring his replacement. Mr. Montague also stated, "You're never not going to be on the back of the paver," further cementing Rhinehart's non-exempt duties.

25.  On January 5, 2026, Kearney hired a new Foreman but terminated the new employee on January 15, 2026, because he was not a good fit for the company.

26.  Shortly thereafter, Kearney reposted the job posting for Foreman.

5

27.    On February 2, 2026, Ronnell LNU (a Rollerman) threatened Rhinehart with physical violence. Rhinehart reported the incident to Mr. Knight, who did nothing to address the situation.

28.    On February 3, 2026, Rhinehart attempted to issue a corrective action against Ronnell for threatening physical violence against him. However, Mr. Knight informed Rhinehart that if Kearney terminated Ronnell based on Rhinehart's report, Rhinehart would be tasked with completing the duties of Ronnell's position. Kearney did not terminate Ronnell despite his egregious behavior.

29.    On February 5, 2026, Kearney hired a new Foreman, which, upon information and belief, was to replace Rhinehart.

30.    On February 6, 2026, Rhinehart became sick and presented Mr. Knight with a doctor's note to take time off until February 11, 2026, to recover from this illness.

31.    On February 9, 2026, Rhinehart received multiple calls from crew members on his team complaining about issues on the job site.

32.    On February 10, 2026, Rhinehart received multiple phone calls and messages from crew members again complaining about issues on the job site and the mistakes made by the new Foreman. In response, Rhinehart drove to the jobsite to help fix the issues.

33.    On February 11, 2026, Kearney terminated Rhinehart from his position under the pretext that he made mistakes on a parking lot job that occurred months earlier in December 2025. Mr. Knight had known that the problem with the job in question was due to the fact that the base work of the parking lot—through no fault of Rhinehart—had been completed incorrectly a year and half prior to December 2025. Nevertheless, Mr. Knight instructed Rhinehart to pave the parking lot, which negatively impacted the overall quality of the paving job.

34.    The true reason for Rhinehart's termination was his repeated requests to be paid for his overtime work, given the physical nature of his job.

35.    From the beginning of Rhinehart's employment, Kearney improperly classified him as an FLSA-exempt employee and paid him a base salary without considering the number of hours he worked in a week.

36.    Throughout his employment with Kearney, Rhinehart consistently worked 56 to 60 hours a week, but did not receive additional compensation for any hour worked in excess of 40 hours.

37.    Therefore, in Rhinehart's fifteen weeks of employment for Kearney, he worked an estimated 214.00 overtime hours, resulting in approximately $18,518.49 in gross unpaid overtime wages.

38.    Rhinehart has incurred attorney's fees and costs in bringing this lawsuit.

## COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### BY FAILURE TO PAY OVERTIME COMPENSATION WAGES

39.   Rhinehart incorporates by reference the allegations set forth in paragraphs one (1) through thirty-eight (38) above.

40.    Kearney was an employer of Rhinehart within the meaning of the FLSA.

41.   Rhinehart was an employee of Kearney within the meaning of the FLSA and, while so employed, was engaged in commerce. 29 U.S.C. § 202(a) and 29 C.F.R. § 552.99.

42.   Kearney's annual gross revenue exceeded $500,000.00 in the year preceding nonpayment.

43.   Rhinehart was employed by Kearney within the three-year period immediately preceding the filing of this action.

44.   Kearney agreed to pay Rhinehart a set weekly salary of $2,307.69. This equaled an annual salary of $120,000 and an hourly rate of $57.69 per hour.

45.   Kearney employed Rhinehart to work but failed to compensate him in accordance with the requirements of the FLSA.

46.   Kearney misclassified Rhinehart as an exempt salaried employee even though Rhinehart primarily performed non-exempt duties comprised of physical labor and the operation of heavy machinery.

47.    Section 207(a)(1) of the FLSA prohibits an employer from employing its non-exempt employees for a workweek longer than forty (40) hours, unless such employee receives compensation for all hours he or she is employed in excess of forty hours at a rate not less than one-and-one-half (1.5) times their regular rate of pay.

48.    Rhinehart frequently worked over forty hours per week for Kearney but was not paid overtime wages in violation of the FLSA.

49.    Kearney knew or should have known that Rhinehart was entitled to receive compensation of time-and-a-half for all hours worked over forty hours in a week. Despite this fact, Kearney failed and refused to pay Rhinehart this rate for the overtime hours he worked from October 27, 2025, through February 11, 2026.

50.    As a consequence of Kearney's FLSA violation, Rhinehart has suffered financial loss in the form of unpaid overtime and is entitled to compensation at a rate equal to time-and-a-half for all hours of overtime worked while he was employed by Kearney.

51.    Kearney's actions complained of herein were deliberate, willful, and without good faith or any legal justification within the meaning of 29 U.S.C. Section 216(b).

**WHEREFORE**, Plaintiff, Brendon Rhinehart, respectfully prays that this Court enter judgment in Plaintiff's favor and against Defendant on Count I, and award the following relief:

(a)     A declaration that Defendant's compensation practices violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 207;

(b)     An award of all unpaid overtime compensation owed to Plaintiff for all workweeks in which Plaintiff worked in excess of forty (40) hours, calculated at a rate not less than one and one-half (1.5) times Plaintiff's regular rate of pay, for the applicable limitations period;

(c)     An equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

(d)     Prejudgment interest on all amounts awarded, to the extent liquidated damages are not awarded or are awarded in a reduced amount;

(e)     Reasonable attorneys' fees and costs of suit pursuant to 29 U.S.C. § 216(b); and

(f)     Such other and further relief as this Court deems just and proper.

**COUNT II**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**FOR RETALIATION FOR REQUESTING UNPAID OVERTIME PAY**

52.     Rhinehart incorporates by reference the allegations set forth in paragraphs one (1) through thirty-eight (38) above.

53.   Kearney was an employer of Rhinehart within the meaning of the FLSA.

54.   Rhinehart was an employee of Kearney within the meaning of the FLSA and, while so employed, was engaged in commerce. 29 U.S.C. § 202(a) and 29 C.F.R. § 552.99.

55.   Kearney misclassified Rhinehart as an exempt salaried employee even though Rhinehart primarily performed non-exempt duties comprised of physical labor and the operation of heavy machinery.

56.   Section 207(a)(1) of the FLSA prohibits an employer from employing its non-exempt employees for a workweek longer than forty (40) hours, unless such employee receives compensation for all hours he or she is employed in excess of forty hours at a rate not less than one-and-one-half (1.5) times their regular rate of pay.

57.   Rhinehart frequently worked over forty hours per week for Kearney but was not properly paid overtime wages in violation of the FLSA.

58.   Around November 2025, Rhinehart complained to Ms. Scott (HR Director) about Kearney's practice of classifying him as an FLSA exempt employee and not paying him time and a half for overtime hours worked despite the fact that he primarily performed physical labor and had minimal supervisory duties as an asphalt foreman.

59.    On December 1, 2025, Kearney posted Rhinehart's position on Zip Recruiter in an attempt to find his replacement.

60.    On February 5, 2026, Kearney hired a new Foreman to replace Rhinehart.

61.    On February 11, 2026, Kearney terminated Rhinehart from his position in retaliation for his complaints related to his unpaid overtime hours worked and his FLSA exempt classification despite performing primarily non-exempt duties.

62.    Kearney's actions complained of herein were deliberate, willful, and without good faith or any legal justification within the meaning of 29 U.S.C. Section 216(b).

**WHEREFORE**, Plaintiff, Brendon Rhinehart, respectfully prays that this Court enter judgment in Plaintiff's favor and against Defendant on Count II, and award the following relief:

(a)    A declaration that Defendant's termination of Plaintiff constituted unlawful retaliation in violation of the anti-retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3);

(b)    An award of back pay representing all wages and benefits Plaintiff lost from the date of termination through the date of judgment;

12

(c)     An award of front pay in lieu of reinstatement, or in the alternative, an order of reinstatement to Plaintiff's former position with full restoration of seniority, benefits, and all other terms and conditions of employment;

(d)     An equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

(e)     Compensatory damages for emotional distress, humiliation, and loss of professional reputation proximately caused by Defendant's retaliatory conduct;

(f)     Reasonable attorneys' fees and costs of suit pursuant to 29 U.S.C. § 216(b); and

(g)     Such other and further relief as this Court deems just and proper. That the Court find that Kearney's violation was willful;

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Dated this 20th day of April 2026.

Respectfully submitted,

*/s/ Gary L. Printy, Jr., Esq*
Gary L. Printy, Jr., Esq.
Florida Bar No. 41956
**THE PRINTY LAW FIRM**
5407 N. Florida Avenue
Tampa, Florida 33604
Telephone (813) 434-0649
Fax (813) 423-6543
garyjr@printylawfirm.com
***Lead Counsel for Plaintiff***

13